IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, EX REL. MICHAEL D. BESANCON, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>UCHICAGO ARGONNE, LLC, )<br>)<br>Defendant. ) | No. 12 C 7309<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Relator Michael D. Besancon, on behalf of the United States and himself individually, has brought a six count second amended qui tam complaint[1] against his former employer, UChicago Argonne, LLC. Counts I through III are brought on behalf of the United States and alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. Count I alleges that defendant violated § 3729(a)(1)(A) by knowingly presenting false or fraudulent claims for payment to the government. Count II alleges that defendant knowingly made, used, or caused to be made or used, false statements or records material to false or fraudulent claims in violation of § 3729(a)(1)(B), and Count III alleges that defendant violated § 3729(a)(1)(G) by knowingly making, or using or causing to be made or used, false records or statements material to an obligation to pay or transmit money or property to the government, or by knowingly avoiding or concealing an obligation to pay money to the government. The remaining counts are brought by Relator in his own name asserting individual claims. Count IV alleges that defendant violated § 3730(h) by terminating Relator's employment in retaliation for his efforts to stop defendant's

---

[1]This action was originally filed under seal pursuant to 31 U.S.C. § 3730 on September 12, 2012, and unsealed on December 20, 2013, after the government declined to intervene.

violations of the FCA. Count V alleges a violation of the Illinois Whistleblower Act, 740 ILCS 174/1 et seq. and Count VI is a common law claim for retaliatory discharge. Defendant has moved pursuant to Fed. R. Civ. P. 12(b)(6) and (9)(b) to dismiss the entire complaint for failure to state a claim and failure to plead fraud with particularity. For the reasons described below, defendant's motion is granted in part and denied in part.

## FACTS

Defendant manages and operates Argonne National Laboratory (the "Lab") for the United States Department of Energy. It employs over 12,000 scientists and engineers at the Lab, who conduct research in areas including: nuclear engineering; basic energy science; biological and environmental research; hard x-ray science; high energy physics; and computational and technological research. Much, but not all of the research conducted at the Lab is done under federally funded contracts for federal agencies including the Department of Energy ("DoE"), Department of Defense and Department of Transportation. Defendant submits bills to the federal government for sponsored work performed at the Lab.

The Lab is operated and staffed by the private sector under a Management & Operating contracts ("M&O") awarded by DoE. Defendant's contract with DoE (the "prime contract") is a "cost plus award fee" ("CPAF") arrangement. It provides for cost reimbursement and also has an "award component" consisting of additional funds the DoE can elect to award defendant as a reward for superior contract performance.

According to the complaint, M&O contracting is highly regulated. In addition to the prime contract, M&O contractors must also comply with: federal cost accounting standards

2

("CAS"), 48 C.F.R. 99; the American Recovery and Reinvestment Act ("ARRA") if ARRA funds are at issue; the Anti-Deficiency Act, 31 U.S.C. §§ 1341, 1352; and the FCA.

As an M&O contractor for DoE, defendant was required to: (1) comply with CAS; (2) maintain and file a written CAS disclosure statement (Form CSB-DS1) accurately describing and revealing its accounting policies and practices, including practices for accumulating, classifying, reporting, and billing all direct and indirect costs; (3) comply with the accounting policies and practices listed in its CAS disclosure statement; (4) accumulate "indirect cost pools which are homogenous" and allocate them to cost objectives in reasonable proportion to the beneficial or causal relationship of the pooled costs to the cost objectives, as required by 48 C.F.R. 99o4.418-40; and (5) file a Statement of Costs Incurred and Claimed ("SCIC") as of September 30 each year which must account for all costs claimed and incurred during the preceding year and certify that those costs were incurred and are allowable under the prime contract.

Relator served as defendant's Chief Financial Officer ("CFO") from December 2008 until his termination on November 22, 2010. He alleges that while serving in that capacity he discovered that the certifications, CAS disclosure statements, cost statements and overhead rate sheets prepared by defendant and submitted to DoE in support of invoices were false or fraudulent, resulting in overpayment to defendant by the government.

In very general terms, Relator alleges that defendant submitted false claims arising from: (1) undisclosed discounts for indirect costs that defendant granted to certain favored subcontractors; (2) billing researcher's time and efforts to cost centers for which their work was not performed; (3) misuse of overhead funds; (4) undisclosed discounted rates granted to users of

3

large machine electricity; (5) billing federally-sponsored projects for cost of space and facilities used by outsiders not associated with defendant's projects; and (6) the undisclosed assignment of one of defendant's employees, Walt Kirchner, as a government liaison in Washington, D.C.

Relator claims to have brought some or all of these alleged improprieties to the attention of defendant's President and Director Eric Isaacs and its Chief Executive Officer Donald Levy. Relator claims that he was directed to continue to extend preferential subcontract rates to certain subcontractors. He continued to object and refused to authorize the discounted rates. Relator claims that Isaacs and/or Levy terminated him in November 2010 as a result of Relator's, (1) refusal to participate in defendant's practice of granting preferential discounted overhead rates not approved by DoE, and/or (2) Relator's opposition to discounting rates for large machine electricity.

## DISCUSSION

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b) for failure to state a claim and plead fraud with particularity. A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating the motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claims is plausible on its face. Id. at 555. To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

4

In addition, because the FCA is an anti-fraud statue, claims under it are subject to the heightened pleading requirements of Rule 9(b). U.S. ex rel. Gross v. AIDS Research Alliance-Chicago, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) provides that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The complaint must provide "the who, what, when, where and how." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). Because the Rule applies to "all averments of fraud, not claims of fraud," defendant argues that Relator's individual retaliation claims, which are premised on a course of allegedly fraudulent conduct, are subject to Rule 9(b)'s requirements. See Borsellino v. Goldman Sachs Grp., Inc., 477 F.3d 502, 507 (7th Cir. 2007).

In Count I, Relator alleges a violation of FCA § 3729(a)(1)(A), which prohibits knowingly presenting or causing to be presented a false or fraudulent claim for payment. To state a claim under this section, Relator must allege that: (1) defendant submitted a false or fraudulent claim; (2) to the government for payment or approval; and (3) knowing that it was false or fraudulent. U.S. ex rel. Fowler v. Caremark, 496 F.2d 730, 741 (7th Cir. 2007), overruled on other grounds Glaser v. Wound Care Consultants, Inc., 570 F.3d 907 (7th Cir. 2009).

In Count II, Relator alleges violations of FCA § 3729(a)(1)(B), which prohibits knowingly making, using or causing to be made or used a false record or statement material to a false or fraudulent claim. To state a claim under this section, Relator must allege that defendant: (1) made a statement to receive money from the government; (2) the statement was false; and (3) defendant knew it was false. Fowler, 496 F.3d at 741.

5

Defendant argues that both counts should be dismissed because they do not allege that it submitted to the government either false or fraudulent claims (Count I) or false statements material to such claims (Count II). According to defendant, both counts are premised entirely on purported false or fraudulent statements in: (a) cost statements; (b) disclosure statements; (c) overhead rate sheets; and (d) invoices. None of these documents, defendant argues, are "claims," and none contain statements material to a claim for payment. In essence, defendant argues that Relator "confuses allegations of non-compliance with CAS with allegations of knowingly submitting false claims or false statements to obtain payment." According to defendant, the complaint contains the former but lacks the latter.

Specifically, defendant argues that Count I fails to allege that the allegedly fraudulent costs statements prepared by defendant are claims for payment, and that Count II fails to allege that the allegedly fraudulent rate sheets and cost and disclosure statements are submitted to obtain payment, that the costs and disclosure certifications are payment conditions, or that rate sheet and certifications submitted to the government were false or knowingly false.

In addition, defendant argues that both counts fail to satisfy Rule 9(b) because they do not identify the specific false claims for payment or specific false statements made to obtain payment. See U.S. ex rel. Wildhirt v. AARS Forever, Inc., 2011 WL 1303390 at *3 (N.D. Ill. 2011). Relying on U.S. ex rel. Walner v. Northshore University Healthsystem, 660 F. Supp.2d 891, 896 (N.D. Ill. 2009)(Kendall, J.), defendant argues that Relator's FCA "claims fail because [he] can only point to a fraudulent scheme and [is] unable to present evidence at an individualized transaction level."

The court agrees with defendant up to a point. The complaint is certainly not a model pleading. It is unnecessarily prolix and argumentative, reading more like a brief than a complaint. Indeed, it comes dangerously close to falling into the rare category of complaint that violates both Fed. R. Civ. P. 8(a) and 9(b). See, e.g., Bank of America, N.A. v. Knight, 875 F. Supp.2d 837 (N.D. Ill. 2012). The complaint's sheer length and detailed explanation of the alleged fraudulent scheme could hardly be considered a "short plain statement of the claim" as required by Rule 8(a). And, as defendant points out, despite its prolixity, the complaint lacks some of the specific details generally required by Rule 9(b) in FCA cases. See U.S. ex rel. Soulias v. Northwestern University, 2013 WL 3275839 at *3 (N.D. Ill. 2013).

Nonetheless, despite its flaws, the court concludes that the complaint contains sufficient detail to survive a motion to dismiss. As noted, the complaint sets out in great detail a complicated scheme to defraud the government by over charging for certain costs. In particular, the complaint details a scheme by which defendant allegedly sought and received overpayments for overstated indirect costs, electricity charges, labor charges, restricted funds, facilities charges and salary and expense charges for defendant's employee, Walt Kirchner. The complaint describes in detail how these overcharges were accomplished and alleges that the assistant CFO for budget, assistant CFO for accounting, as well as Isaacs and CEO Levy were aware of and approved the overcharging. With respect to "transactional detail," the complaint alleges that every invoice for payment submitted over a five year period contained false claims.

As this court has noted, three primary policies support Rule 9(b)'s requirement that fraud be pled with particularity: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse

7

party.  U.S. ex rel. Yannacopolous v. General Dynamics, 315 F. Supp.2d 939, 944 (N.D. Ill. 2004).  Rule 9(b) does not require that Relator explain his entire case, only that he state the actions that allegedly constitute fraud.  Id.  The instant complaint satisfies these policies.  Consequently, the court denies defendant's motion to dismiss Counts I and II.

Count III attempts to allege a "reverse" false claim under 31 U.S.C. § 3729(a)(1)(G), which makes it a violation to knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the government.  According to Relator, defendant knowingly overcharged the government for indirect charges as alleged in Count I, and violated § 3729(a)(1)(G) by not returning those overcharges.

A reverse false claim under § 3729(a)(1)(G) requires Relator to allege that defendant had an existing, legal obligation to pay or transmit money or property to the government and that defendant submitted false statements or records to conceal, avoid, or decrease that obligation.[2]  U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004).  Count III alleges no such obligation.  In his brief, Relator states that every cost-reimbursement contract inherently contains an obligation to return any overpayment.  He cites no legal authority or any contractual provision to support this, but even if correct, under Relator's theory whenever there is a violation under § 3729(a)(1)(A) for a defendant's receipt of payment of a false claim, there would also be a violation of § (a)(1)(G) for failing to return the overpayment.  That, of course, would make

---

[2]Obligation is defined as an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee based or similar relationship, from statute or regulation, or from the retention of any overpayment. 31 U.S.C. § 3729(b)(3)

§ (a)(1)(G) redundant to § (a)(1)(A), which is not the intent of the statute. Additionally, Relator fails to allege that defendant submitted any false statements or records to conceal an obligation to repay. Indeed, Count III does not allege that defendant failed to pay anything, instead alleging that the [government] paid for claims that would otherwise not have been allowed." This is the exact same allegation as in Counts I and II.. Absent something more, the court concludes that Count III fails to state a claim.

In Count IV, Relator alleges that he was terminated for refusing to follow what he has described as defendant's illegal practices in violation of § 3730(b), which makes it a violation to discharge an employee because of efforts to stop any violations of the FCA. To state a claim under § 3730, Relator must allege that: (1) he engaged in conduct protected under the FCA; (2) defendant had knowledge of his activities; and (3) the protected activity was the cause of his termination. See Manfield v. Alutiiq Intern. Solutions, Inc., 851 F. Supp.2d 196, 202 (D. Me. 2012) (setting forth the elements of a § 3730 claim post FERA Amendments).

In Count V, Relator alleges that defendant violated the Illinois Whistleblower Act, which makes it illegal for an employer to "retaliate against an employee for refusing to participate in activity that would result in a violation of state or federal law, rule or regulation." 740 ILCS 174/20. To state a claim under the Act, Relator must allege that: (1) he refused to participate in an activity that would result in a violation of state or federal law; and (2) his employer retaliated against him because of that refusal. Sardiga v. Northern Trust Co., 409 Ill.App.3d 56, 61 (1st Dist. 2011).

Counts IV and V allege that defendant terminated Relator because he refused to participate in defendant's scheme to authorize discounted overhead rates, and grant large

9

machine electricity rates to a laboratory data center. In essence, he claims to have been terminated for failing to participate in the alleged scheme to overcharge the government. These allegations state a claim under both the FCA and the Illinois Whistleblower Act. Consequently, defendant's motion to dismiss Counts IV and V is denied.

Finally, in Count VI, Relator attempts to allege a common law retaliatory discharge claim. To state such a claim, he must allege that he was: (1) discharged; (2) in retaliation for his activities; and (3) the discharge violates a clear mandate of public policy. Hinthorn v. Roland's of Bloomington, Inc., 119 Ill.2d 526, 529 (1988). In Illinois, retaliatory discharge is a limited and narrow cause of action. Turner v. Memorial Medical Center, 233 Ill.2d 494, 500 (2009).

There is no precise definition of "clearly mandated public policy," but in general the matter must strike at the heart of a citizen's social rights, duties and responsibilities before the tort will be allowed. Id. In his complaint, Relator alleges that there is a clear public policy that government contractors truthfully report their costs and accounting practices. In essence, he suggests that it is a clearly mandated public policy to comply with contract provisions. If that were the case, every claim for termination and breach of contract would also result in a claim for retaliatory discharge. That is not what the Illinois Supreme Court contemplated when it created the tort, see Kelsay v. Motorola, Inc., 74 Ill.2d 172 (1988) and Palmateer v. International Harvester Co., 85 Ill.2d 124 (1981), and it does not amount to a clearly mandated public policy. Accordingly, defendant's motion to dismiss Count VI is granted.

## **CONCLUSION**

For the reasons described above, defendant's motion to dismiss is granted as to Counts III and VI and denied as to Counts I, II, IV and V. Defendant is directed to answer the remaining counts on or before October 20, 2014. The parties shall file a joint status report using

this court's form on or before October 23, 2014. This matter is set for a report on status on October 28, 2014, at 9:00 a.m.

**ENTER:** **September 24, 2014**

_____
**Robert W. Gettleman**
**United States District Judge**